648 A.2d 1081

**H. Brandis MARSH, et ux.**

**v.**

**LOFFLER HOUSING CORPORATION.**

**No. 186, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Oct. 27, 1994.

118

Robert X. Perry, Jr. (Karin M. Ryan and Wilkes, Artis, Hedrick & Lane, Chartered, on the brief), Washington, DC, for appellants.

Robert C. Douglas (Piper & Marbury, on the brief), Baltimore, for appellee.

Argued before WENNER, CATHELL and HARRELL, JJ.

HARRELL, Judge.

Appellants, H. Brandis and Jo Ann K. Marsh (Marshes), appeal from an Order of the Circuit Court for St. Mary's County (Raley, J.) granting the motion of appellee, Loffler Housing Corporation (Loffler), to modify an arbitrator's award in a contract dispute so as to include costs and attorneys' fees.[1] We have re-ordered appellants' issues as follows:

## Issues

I.  Did the lower court have the authority to award Loffler attorneys' fees where the Uniform Arbitration Act authorizes attorneys' fees only if so provided in the arbitration agreement between the parties?

II. Did the lower court have authority to modify the arbitrator's award to reallocate the costs of the arbitration and to include attorneys' fees incurred by Loffler where none of the three enumerated bases set forth in the Uniform Arbitration Act for modification of an award by a court were satisfied by the facts of this case?

---

1.  The circuit court also denied appellants' motion to vacate the arbitrator's award. Appellants, however, have limited their appeal only "to the issue of whether the court below had authority to modify the arbitration decision and award attorneys' fees to Loffler."

*Facts*

In September 1988, appellants purchased a three-story house on Knight Road, Leonardtown, Maryland in St. Mary's County. Appellants decided to renovate and expand their house, and solicited bids from various contractors for the renovation. Appellants ultimately selected appellee to serve as general contractor on the project.

On 4 October 1989, appellants and appellee entered into an American Institute of Architects (AIA) standard construction contract (AIA Contract), with the attendant AIA General Conditions of the Contract for Construction (General Conditions). Article 16.1.7 of the AIA Contract, entitled "Other Documents, if any, forming part of the Contract Documents are as follows:", provided:

> It is agreed that the documents listed below and attached to this contract routinely used by Loffler Housing Corporation, shall be executed by the appropriate respective parties to this agreement and shall become part of this agreement. Where there are conflicts between this document and those listed below, this document shall supersede those listed below. . . .

The first document listed and attached was the Home Improvement Contract, duly signed and executed by appellants at the same time as the AIA Contract. The Home Improvement Contract provided, in pertinent part, that:

> In the event that payment under this contract is enforced through legal action, or other collection action, homeowner agrees to pay contractor's costs and attorney's fees related to said action.

Article 4.5 of the General Conditions set forth the agreement to arbitrate any dispute arising out of or relating to the AIA Contract. It stated:

> Any controversy or claim arising out of or related to the contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. . . .

Paragraph six of the Construction Industry Arbitration Rules (Rules) in effect at the time the contract was executed stated that the initiating party shall provide written notice setting forth the nature of the dispute to the other party. Paragraph eight explained that once a claim is filed, any new or different claims or counterclaims shall also be made in writing.

Once the contract was executed, appellee began construction on appellants' home. Subsequently, a dispute developed regarding the final three payments remaining to be made by appellants to appellee pursuant to the AIA Contract. On 15 April 1992, appellee filed a mechanic's lien petition in the circuit court against appellants' property, seeking $3993.38, plus interest. In response, appellants, among other things, filed a petition for arbitration based on the arbitration clause in the General Conditions. On 22 May 1992, the circuit court stayed the mechanic's lien action and ordered the parties to arbitrate their dispute.

In July 1992, appellants filed a written claim against appellee with the American Arbitration Association (AAA) alleging that appellee performed defective workmanship and requested improper and excessive charges for the work performed.[2] Appellants requested $151,000 in damages. Appellee counterclaimed, seeking $50,000 for an unpaid balance, lost revenue, and items not previously billed. During twelve days of hearings, both sides presented substantive evidence regarding their written issues submitted to the arbitrator. Appellee also apparently offered documentation of its attorneys' fees.[3] Both sides were then granted leave to file post-hearing briefs.

---

**2.** Although Article 4.3.2 provided that all claims "shall be referred initially to the Architect for action," that Article also provided that "[t]he decision by the Architect in response to a Claim shall not be a condition precedent to arbitration ... in the event ... the Claim relates to a mechanic's lien." Therefore, appellants initial filing for arbitration, as opposed to filing with the Architect, was arguably proper. In any event, no waiver claim was made below.

**3.** Although no transcripts of the twelve days of hearings are part of the record before the circuit court or us, we are able to conclude that appellee presented evidence to the arbitrator of its attorneys' fees by

On 12 August 1993, the arbitrator awarded appellee $2791 and denied appellants' claims in their entirety. Specifically, the award stated: 1) all subcontractor warranties would be honored; 2) the parties would split administrative fees and expenses of the AAA as well as the compensation and expenses of the arbitrator; and 3) the award was in full settlement of all claims and counterclaims submitted by the parties. There was no mention of attorneys' fees.

On 3 September 1993, appellants filed with the arbitrator a motion to clarify his award as to three issues: 1) what was included in "administrative fees and expenses;"[4] 2) which defective workmanship was to be covered by "warranties;" and 3) whether appellee was required to submit "as-built" plans as provided for in the AIA Contract. Appellee filed a response to the motion to clarify, generally opposing appellants' motion, but also requesting that the award be clarified to order appellants to pay costs and expenses plus appellee's attorneys' fees. Citing Md.Code Ann., Cts. & Jud.Proc. § 3–221,[5] appellee renewed its argument that because the clause in the Home Improvement Contract awarded costs and attorneys' fees if appellee enforced payment via legal action or other collection action, the arbitrator should have included costs and attorneys' fees in his award. On 5 October 1993, the arbitrator filed a clarified award generally reaffirming his award of 12 August 1993. Again, however, the award was silent as to attorneys' fees.

---

virtue of references appearing in its post-hearing brief alluding to such evidence having been presented to the arbitrator.

4. Appellants contended that the cost of the court reporter should be paid by both parties.

5. Section 3–221 provides:
   (a) *Arbitrators.*—Unless the arbitration agreement provides otherwise, the award shall provide for payment of the arbitrators' expenses, fees, and any other expenses incurred in the conduct of the arbitration.
   (b) *Counsel fees.*—Unless the arbitration agreement provides otherwise, the award may not include counsel fees.

On 17 September 1993, while the motions to clarify were pending, appellants filed in the Circuit Court for St. Mary's County a motion to vacate the arbitrator's award, arguing that the award was "completely irrational when viewed against the twelve days of hearings and thousands of pages of documentation presented by the parties and the substantive contract provisions." On 20 October 1993, appellee filed an opposition to the motion to vacate and a petition to correct or modify the award. Appellee's motion to correct or modify the award argued, pursuant to Md.Code Ann., Cts. & Jud.Proc. § 3–223(b)(2) (1989 Replacement Volume & 1993 Supp.) and *Bernard v. Kuhn*, 65 Md.App. 557, 501 A.2d 480 (1985),[6] that the circuit court must modify the arbitrator's award to include appellee's costs and attorneys' fees. Appellants filed an opposition to appellee's petition to correct or modify and a reply to appellee's opposition to the petition to vacate the award. Appellants argued that none of the statutory bases set forth in § 3–223(b)(2) was met in this case, and that *Bernard* was distinguishable because in that case the issue of attorneys' fees was not submitted to the arbitrator for consideration. Therefore, argued appellants, because the issue of costs and attorneys' fees was submitted to the arbitrator, § 3–223(b)(2) and *Bernard* were inapplicable to the case *sub judice*.

On 15 November 1993, the circuit court held a hearing on the various motions. At the close of oral argument, the court denied appellants' motion to vacate and granted appellee's motion to modify. The court found that § 3–223(b)(2) empowered it to modify the award in accordance with the Home Improvement Contract language, because the arbitrator ruled on an issue not submitted for arbitration, namely costs and attorneys' fees. Because this issue was never formally sub-

---

**6.** Section 3–223(b)(2) provides that "[t]he court shall modify or correct the award if ... [t]he arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted." *Bernard* held that pursuant to § 3–223(b)(2), "an arbitrator's failure to conform an award to the unambiguous requirements of an arbitration agreement is a proper basis for modification of the award." *Bernard,* 65 Md.App. at 564, 501 A.2d 480.

mitted to the arbitrator, the court ruled that the award must be modified to include attorneys' fees as per the agreement between the parties. The court then conducted an evidentiary hearing on the amount of attorneys' fees incurred by appellee and the costs of arbitration, and awarded appellee $53,676.48 plus costs. Appellants filed a timely appeal to this Court.

## Discussion

The Maryland Uniform Arbitration Act (Act), Md. Code Ann., Cts. & Jud.Proc. §§ 3–201 to 3–234 (1989 Replacement Volume & 1993 Supp.), was enacted in 1965 as an alternative method of dispute resolution. The Act embodies a legislative policy favoring enforcement of executory agreements to arbitrate. *Gold Coast Mall, Inc. v. Larmar Corp.,* 298 Md. 96, 103, 468 A.2d 91 (1983). The arbitration process, in turn, provides a speedy, informal, relatively inexpensive, and private procedure for resolving controversies arising out of commercial transactions. *Bel Pre Medical Ctr., Inc. v. Frederick Contractors, Inc.,* 21 Md.App. 307, 315, 320 A.2d 558 (1974), *rev'd on other grounds,* 274 Md. 307, 334 A.2d 526 (1975). Indeed, the General Assembly has established a policy in favor of the settlement of disputes through arbitration, and thus has severely limited the role of the courts in this process. *O–S Corp. v. Samuel A. Kroll, Inc.,* 29 Md.App. 406, 409, 348 A.2d 870 (1975).

The Act does provide, however, that once a court obtains jurisdiction over an arbitration, it retains jurisdiction to correct or modify the award or to vacate the award. *C.W. Jackson & Assocs. v. Brooks,* 289 Md. 658, 426 A.2d 378 (1981). Modification of an arbitrator's award is governed by § 3–223(b). If the petition to correct or modify is granted, then § 3–223(c) requires the court to modify or correct the award to effect its intent and to confirm the award as modified or corrected. Otherwise, the court must confirm the award as made.

Appellants contend that the circuit court did not have the authority to award attorneys' fees because the arbitration

agreement did not provide for such fees. Appellants also assert that the circuit court improperly modified the arbitrator's award to include attorneys' fees and costs pursuant to § 3–223(b)(2). Each argument will be considered in turn.

## I.

■ Litigants in the United States must follow the so-called "American rule" with regard to attorneys' fees. A court cannot award attorneys' fees to the prevailing party unless a statute or contract provision provided for the award, or the losing party brought suit in bad faith. *Rice v. Biltmore Apartment Co.*, 141 Md. 507, 517, 119 A. 364 (1922); *Maxima Corp. v. Cystic Fibrosis Found.*, 81 Md.App. 602, 622, 568 A.2d 1170, *cert. denied*, 319 Md. 582, 573 A.2d 1337 (1990). An arbitration award, however, may lawfully include an award of attorneys' fees if the underlying agreement between the parties so provides. *See* Md.Code Ann., Cts. & Jud.Proc. § 3–221(b) (1989 Replacement Volume & 1993 Supp.).

■ In arbitration matters, § 3–221(b) of the Maryland Uniform Arbitration Act governs the award of counsel fees. It provides:

(b) *Counsel fees.*—Unless the arbitration agreement provides otherwise, the award may not include counsel fees.

Therefore, we must first decide what constitutes the "arbitration agreement," and then decide whether that agreement provided for attorneys' fees.

Focusing on the language, "[u]nless the arbitration agreement provides otherwise," appellants contend that the "arbitration agreement" in the case *sub judice* did not otherwise provide for the allocation of attorneys' fees, and therefore the court had no authority to award such fees. Appellants assert that the arbitration agreement was composed of only what was set forth in Article 4.5 of the General Conditions. That Article stated:

Any controversy or claim arising out of or related to the contract, or the breach thereof, shall be settled by arbitra-

tion in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association....

Because there is no provision there making either party responsible for attorneys' fees, appellants argue that the arbitration agreement did not provide for attorneys' fees and therefore § 3–221(b) precludes such fees from being awarded in the instant case.

Appellants also contend, without supporting authority, that even if the arbitration agreement is read more broadly than Article 4.5, the attorneys' fees provision of the Home Improvement Contract cannot be considered part of the arbitration agreement as it does not apply to arbitration. That provision provides:

> In the event that payment under this contract is enforced through legal action, or other collection action, homeowner agrees to pay contractor's costs and attorney's fees related to said action.

Appellants contend that an arbitration proceeding is not a "legal action, or other collection action" for which they would be responsible for costs and attorneys' fees.

Appellee, on the other hand, argues that there was no singular arbitration agreement, but rather numerous clauses throughout the totality of the contract that worked together to establish the arbitration rights of the respective parties. Moreover, appellee contends that because an arbitration is both a legal action and a collection action, the attorneys' fees provision of the Home Improvement Contract is applicable in the instant case and must be read as part of the agreement to arbitrate.

■ While the intent of the parties to award attorneys' fees for any legal or collection action is readily discernible from the clear and unambiguous language of the Home Improvement Contract, we nevertheless think it appropriate to stress that the intention of the parties to an agreement must be garnered from the terms considered as a whole, and not from the clauses considered separately. *Delmarva Drilling Co. v. Tuckahoe Shopping Ctr., Inc.,* 268 Md. 417, 423, 302 A.2d 37

(1973); *Kasten Constr. Co. v. Rod Enters.,* 268 Md. 318, 329, 301 A.2d 12 (1973). It would be contrary to modern contract law to read the arbitration agreement to include only the express authority to arbitrate set forth in Article 4.5. Indeed, Article 4.5 of the General Conditions was only one of several clauses throughout the AIA Contract that related to arbitration.[7]

Maryland courts have long held that "in ascertaining the true meaning of a contract ... the contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing." *Sagner v. Glenangus Farms, Inc.,* 234 Md. 156, 167, 198 A.2d 277 (1963); *see also Kimmel v. W.T. Grant Co.,* 233 Md. 466, 469, 197 A.2d 122 (1963); *Mattingly Lumber Co. v. Equitable Bldg. & Sav. Ass'n,* 176 Md. 403, 407, 5 A.2d 458 (1939). One paragraph of special provisions in a contract may not be read alone, without reference to the other paragraphs of special provisions elsewhere in the contract. *Kelley Constr. Co. v. Washington Suburban Sanitary Comm'n,* 247 Md. 241, 249, 230 A.2d 672 (1966); *Wheaton Triangle Lanes, Inc. v. Rinaldi,* 236 Md. 525, 530–31, 204 A.2d 537 (1964); *Schapiro v. Jefferson,* 203 Md. 372, 378, 100 A.2d 794 (1953). Thus the various clauses pertaining to arbitration scattered throughout the AIA Contract must be read *in pari materia* to comprise the "arbitration agreement."

■ The Home Improvement Contract expressly provided that appellee is entitled to costs and attorneys' fees if it must enforce payment by "legal action, or other collection action."

---

7. Article 4 contained several provisions regarding when and how arbitration was to be conducted. Other documents incorporated by reference into the AIA Contract also contained arbitration provisos. For example, the Addendum to Restoration of and Alteration to the Residence of H. Brandis and Joanne K. Marsh, Knight Road, Leonardtown, Maryland (Addendum) contained a clause awarding costs of arbitration to the homeowner if the contractor requested arbitration. That Addendum also gave either party the authority to proceed to arbitration in the event one party was unsatisfied with the Architect's final decision.

Article 4.5 of the General Conditions, however, provided for arbitration in lieu of legal action to resolve a dispute arising out of the AIA Contract. Therefore, by virtue of the agreement to arbitrate contained in the contract, appellants could, and did, confine appellee's only available means of collection to arbitration. The Court of Appeals has held that "[w]here several instruments are made a part of a single transaction they will all be read and construed together as evidencing the intention of the parties in regard to the single transaction." *Rocks v. Brosius,* 241 Md. 612, 637, 217 A.2d 531 (1965). Thus the language of the Home Improvement Contract, read *in pari materia* with the dispute resolution provisions contained elsewhere in the AIA Contract, applies to collection actions such as arbitration. Appellee's aborted effort to collect via a mechanic's lien petition, coupled with its counterclaim in arbitration, constituted "other collection actions," as those terms are used in the Home Improvement Contract. Appellee instituted the action to collect an unpaid balance and was required to pursue its claim through arbitration. Appellants' petition for arbitration changed the forum of the claim, but did not change the nature of the action. Therefore, we hold that the arbitration proceeding constituted a collection action, thereby vesting authority in the arbitrator and the court to award attorneys' fees.[8]

## II.

Appellants also contend that the circuit court erred in modifying the arbitrator's award pursuant to § 3–223(b)(2) to include costs and attorneys' fees. As that section permits modification of an award only if the arbitrator ruled upon an issue not submitted for arbitration, appellants argue that the issue of costs and attorneys' fees was, in fact, submitted for

---

8. Appellee cites *B & H Constr. & Supply Co. v. District Bd. of Trustees,* 542 So.2d 382 (Fla.Dist.Ct.App.), *review denied,* 549 So.2d 1013 (Fla. 1989) for the proposition that arbitration is a legal action. Because we hold that arbitration is a collection action under the Home Improvement Contract, however, we need not reach that issue.

arbitration and ruled upon by the arbitrator. We consider costs and attorneys' fees separately to facilitate our analysis.

*Attorneys' Fees*

█ In support of the contention that the issue of attorneys' fees was submitted for arbitration, appellants highlight several instances in the Joint Record Extract where appellee requested attorneys' fees. These include, *inter alia,* appellee's post-hearing brief directed to the arbitrator, appellee's response to appellants' motion to clarify before the arbitrator, and appellee's petition before the circuit court to correct or modify the award.

Appellee, on the other hand, argues that the issue of attorneys' fees was never submitted to the arbitrator. Appellee emphasizes that neither appellants' written submission of claims for arbitration, nor appellee's written list of counterclaims, both submitted prior to the commencement of hearings before the arbitrator, contained a request for attorneys' fees, and the arbitrator's failure to award attorneys' fees was, in effect, a ruling on an issue not submitted for arbitration. Therefore, § 3–223(b)(2) empowered the circuit court, in the exercise of its equitable powers, to modify the award to comply with the express language of the Home Improvement Contract.

The issues submitted to the arbitrator for determination are clearly enunciated in appellants' arbitration claim and appellee's counterclaim. Appellants' original claim was for defective workmanship and excessive charges. Appellee's counterclaim was for an unpaid balance, lost revenue, and items not previously billed. There was no claim by either party for attorneys' fees, and neither party questioned the applicability of the attorneys' fees provision contained in the Home Improvement Contract. The arbitration agreement plainly provided that all claims for arbitration must be submitted in writing. Article 4.3.1 of the General Conditions required that "[c]laims must be made by written notice." Paragraph six of the Construction Industry Arbitration Rules (Rules) provided

that the initiating party shall provide written notice setting forth the nature of the dispute to the other party. Paragraph eight explained that, once a claim is filed, any new or different claims or counterclaims shall also be made in writing.[9] While it is apparent from appellee's post-hearing brief submitted to the arbitrator that it presented evidence during the arbitration proceedings regarding the *amount* of its attorneys' fees, the issue of *liability* for attorneys' fees was never raised. There is no evidence in the record indicating that either party submitted the issue of liability for attorneys' fees to the arbitrator.

Having decided that the issue of liability for attorneys' fees was not submitted to the arbitrator, we now consider the circuit court's application of § 3–223(b). That section provides:

(b) *Conditions for modification or correction of award.*— The court shall modify or correct the award if:

(1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award;

(2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without

---

**9.** Article 4.5.2 of the General Conditions provided that the Rules "currently in effect" would govern any arbitrable claims, unless the "parties mutually agreed otherwise." The language "currently in effect" would normally be construed to mean in effect at the time the contract was executed in October 1989. The parties' arbitration claims, however, were not filed until July–August 1992. The hearings before the arbitrator commenced in December 1992 and concluded in July 1993. In the circuit court, appellee represented that the Rules applied by the arbitrator were those for arbitration cases filed "on or after May 1, 1992." Appellants did not contravene that assertion. To the extent that this situation raises the potential for confusion as to which version of the Rules should have been applied by the arbitrator, our research reveals that the apparent discrepancy is not meaningful.

Only paragraphs six and eight of the Rules appearing in the Joint Record Extract (applying to cases filed on or after May 1, 1992) are of particular relevance to our discussion. We have determined that there was no substantive difference with regard to those paragraphs between the Rules in effect in October 1989 and those apparently applied by the arbitrator in the case *sub judice.*

affecting the merits of the decision upon the issues submitted; or

(3) The award is imperfect in a matter of form, not affecting the merits of the controversy.

The trial judge concluded that subsections (1) and (3) were inapplicable to the case at bar, but that subsection (2) vested the court with authority to modify the award to comply with the attorneys' fees provision of the Home Improvement Contract. The trial judge explained:

So, the Court believes the language, "In the event the payment under this contract is enforced through legal action, or other collection action, homeowner agrees to pay contractor's costs and attorney's fees related to said action" that is not something that has been submitted to the Arbitrator for decision.

It is not apparent from the record, however, whether the judge also found that the arbitrator actually ruled on the issue of attorneys' fees. Section 3–223(b)(2) permits a court to modify an award only if the arbitrator *ruled on* an issue not submitted. It is clear that the arbitrator made no reference to attorneys' fees in either the initial award or the clarified award. Both appellants and appellee, in their briefs as well as at oral argument, agree that such silence constituted a ruling on the issue of attorneys' fees. We perceive, however, that the arbitrator's silence as to attorneys' fees could be construed as either a failure to rule on the issue or a denial of attorneys' fees to appellee. In either case, we affirm the circuit court's decision.

"Arbitration" is defined as "the voluntary submission of a dispute to a disinterested person or persons for final determination." *McKinney Drilling Co. v. Mach I Ltd. Partnership*, 32 Md.App. 205, 205–06, 359 A.2d 100 (1976) (footnote omitted). The universe of arbitration is therefore defined by those issues that are in dispute. *Crown Oil & Wax Co. v. Glen Constr. Co.*, 320 Md. 546, 578 A.2d 1184 (1990); *Rosecroft Trotting & Pacing Ass'n v. Electronic Race Patrol, Inc.*, 69

Md.App. 405, 518 A.2d 137 (1986). An issue not in dispute is not arbitrable.

The issue of attorneys' fees in the instant case was not disputed, and therefore not arbitrable. *See Bernard v. Kuhn,* 65 Md.App. 557, 565–66, 501 A.2d 480 (1986) (quoting *Agnew v. Lacey Co–Ply,* 33 Wash.App. 283, 654 P.2d 712, 715, *review denied,* 99 Wash.2d 1006 (1983)) (" 'The question of whether or not attorney's fees should be awarded to the prevailing party was not an issue submitted to the tribunal for arbitration with the other claims and disputes; having already been decided by the parties by agreement, it was not arbitrable.' "). The Home Improvement Contract clearly provided that appellee was entitled to costs and attorneys' fees if it had to enforce payment by legal action or other collection action. The arbitrator, however, ordered the parties to split the costs and remained silent as to attorneys' fees, in direct contravention of the Home Improvement Contract language. We conclude from the record before us that the arbitrator erroneously deemed this provision inapplicable to an arbitration proceeding and thus awarded costs, but no attorneys' fees, in accordance with § 3–221 of the Maryland Uniform Arbitration Act. Consequently, the arbitrator's failure to award attorneys' fees was, in effect, a ruling that the "American rule" prevailed, i.e., both sides bear their own attorneys' fees.

Assuming that the arbitrator did rule on the issue of attorneys' fees, we conclude that the circuit court was correct in modifying the award pursuant to § 3–223(b)(2). In *Bernard v. Kuhn,* 65 Md.App. 557, 501 A.2d 480 (1986), cited by appellee and apparently relied upon by the circuit court, this Court held that a court shall modify an arbitration award to conform to the unambiguous requirements of an arbitration agreement.[10] In *Bernard,* appellant and appellee entered into a Shareholder's Agreement whereby appellee agreed to sell

---

**10.** As discussed *supra,* the agreement to arbitrate in the instant case must be read to include the attorneys' fees provision of the Home Improvement Contract.

and appellant agreed to purchase 1600 shares of stock in a corporation, B–K Dynamics. Appellee also was granted a right of first refusal if certain specified events occurred. Ultimately, a dispute arose between the parties as to whether a third-party offer to buy company stock triggered appellee's right of first refusal. Appellee made a demand for arbitration in accordance with the arbitration agreement in the Shareholder's Agreement. That arbitration agreement provided:

> The cost of said arbitration, including all reasonable attorney's fees and other proper expenses incident thereto incurred by the winning party, will be borne by the losing party relative to said arbitration, and this fact will be reflected in the arbitrator's decision.

The demand for arbitration did not mention the allocation of costs and fees as an issue to be decided.

Prior to the commencement of the arbitration hearing, the parties stipulated that the arbitrator shall include in the award an allocation of the arbitrator's expenses in accordance with the arbitration agreement. After a hearing, the arbitrator found for appellant and ordered the parties to share the costs of his fee including the other fees and expenses incurred. Each party was further ordered to pay his own legal fees.

Appellant filed a motion to modify the award pursuant to § 3–223(b)(2) alleging that the costs and fees were not a matter submitted for arbitration, and that the division of costs and fees was contrary to the arbitration agreement. The circuit court denied his motion and found that the issue of costs and counsel fees was submitted for arbitration. Reversing the trial court, this Court held that the issue of costs and counsel fees was not submitted for arbitration. *Id.* at 563, 501 A.2d 480. This Court explained that the issue submitted for arbitration related only to whether a third-party offer to purchase stock triggered appellee's right of first refusal. *Id.* Moreover, this Court concluded that "[a]ll that the arbitrator is directed to do with reference to costs is to compute the amount and assess the costs against the non-prevailing party.

The function of the arbitrator in these circumstances is purely ministerial." *Id.* at 562, 501 A.2d 480.

In support of its conclusion in *Bernard,* this Court cited *In re Shapiro,* 197 Misc. 241, 97 N.Y.S.2d 644 (N.Y.App.Div. 1949), *modified sub nom. Shapiro v. Gordon,* 277 A.D. 927, 98 N.Y.S.2d 451 (N.Y.App.Div.1950); *Messina & Briante, Inc. v. Blitman Constr. Co.,* 32 Misc.2d 21, 223 N.Y.S.2d 533 (N.Y.App.Div.1961), *aff'd,* 19 A.D.2d 862, 245 N.Y.S.2d 985 (N.Y.1963); and *Agnew v. Lacey Co–Ply,* 33 Wash.App. 283, 654 P.2d 712, *review denied,* 99 Wash.2d 1006 (1983) for the proposition that "an arbitrator's failure to conform an award to the unambiguous requirements of an arbitration agreement is a proper basis for modification of the award." *Id.* at 564, 501 A.2d 480. Most apposite to the case at bar is the language of *Agnew,* quoted by *Bernard,* 65 Md.App. at 565–66, 501 A.2d 480. The Court of Appeals of Washington explained:

> The attorney's fees clause stated that if either party undertook arbitration "then the prevailing party shall be entitled to reasonable attorney's fees." We do not believe that this language, agreed to by both parties *prior* to arbitration, gave the arbitrators discretion with regard to attorney's fees except for the amount of the award.... The question of whether or not attorney's fees should be awarded to the prevailing party was not an issue submitted to the tribunal for arbitration with the other claims and disputes; having already been decided by the parties by agreement, it was not arbitrable. To hold otherwise would require us to ignore the express language of a contract, something that courts may not do.

In *Bernard* and *Agnew,* the arbitrator ruled upon an issue not submitted for arbitration, thereby empowering the court to modify the award to conform to the contract provision allocating attorneys' fees and costs. We think the reasoning of these cases is directly applicable to the case *sub judice.* As we explained in *Bernard:* "To hold otherwise would undermine this highly favored method of resolving disputes if contracting parties perceived that contractual provisions mu-

tually agreed upon could be ignored by the arbitration tribunal." *Bernard,* 65 Md.App. at 566, 501 A.2d 480.

■■■■■ This conclusion, however, does not end our inquiry. It is equally plausible that the arbitrator's silence as to attorneys' fees could be interpreted as a declination to rule on that issue. It is possible that the arbitrator, finding the Home Improvement Contract language inapplicable to the arbitration proceeding, could have decided that he had no authority to award attorneys' fees pursuant to § 3–221(b),[11] and therefore declined to rule on that issue. In that event, § 3–223(b)(2) would be inapplicable, and the circuit court would have been in error in modifying the award pursuant to that section. Yet by extending the reasoning of *Bernard* and *Agnew,* we hold that the circuit court, in this instance, would be right for the wrong reasons. When the parties to an arbitration agreement expressly provide for the allocation of costs and counsel fees, and that issue is not in dispute, i.e., not arbitrable, that agreement must be upheld in an arbitration proceeding, and reflected in the award. As explained in *Bernard,* "[t]he function of the arbitrator in these circumstances is purely ministerial." *Bernard,* 65 Md.App. at 562, 501 A.2d 480. Should an arbitrator fail to conform the award to the unambiguous requirements set forth in the arbitration agreement, a court shall modify the award to conform to the contract requirements.

## Costs

■■■■■ The issue of costs was similarly not submitted for arbitration. It is clear from the face of the award, however, that the arbitrator did rule on this issue. The clarified award stated:

> The administrative fees and expenses of the American Arbitration Association as well as the compensation and expenses of the Arbitrator shall be borne equally by the

---

**11.** Section 3–221(b) expressly precludes an arbitration award from including counsel fees if the agreement to arbitrate does not otherwise provide for them.

parties. Said fees, compensation and expenses shall be paid as directed by the Association.

Therefore, § 3–223(b)(2) is applicable, as the arbitrator ruled upon an issue not submitted for arbitration. Consequently, the trial court was not clearly erroneous in modifying the award to order that costs be paid by appellants. Section 3–221(a) provides that "[u]nless the arbitration agreement provides otherwise, the award shall provide for payment of the arbitrators' expenses, fees, and any other expense incurred in the conduct of the arbitration." The Home Improvement Contract, as subsumed in the arbitration agreement, expressly provided that the prevailing party in a collection action was to be awarded costs and expenses. Thus the court was correct in invoking its equitable powers to modify the award pursuant to § 3–223(b)(2).

JUDGEMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.