732 A.2d 907

**Lola Hughes PARKS**

v.

**Myrtle SOMBKE, et vir.**

**No. 1231, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

July 6, 1999.

Jeffrey T. Brown (Budow & Noble, P.C., on the brief), Bethesda, for Appellant.

Charles E. Matz (Jacob Matz and Jacob Matz, P.A., Towson, Alfred A. Lacer and Lacer, Sparling, Densford and Reynolds, P.A., Lexington Park, on the brief), for Appellees.

Argued before MOYLAN and DIANE O. LEASURE (specially assigned), and JOHN J. BISHOP, Jr. (Retired, specially assigned), JJ.

DIANE O. LEASURE, Judge (Specially Assigned).

This case arises out of an automobile accident that occurred on March 22, 1993. The appellees, Myrtle Sombke and Harlowe Sombke, filed suit for negligence and loss of consortium. Lola Hughes Parks, appellant, conceded liability and the parties chose to submit the question of damages to binding arbitration. The parties stipulated to a high/low of $150,000.00/$25,000.00. The appellant submitted a list of acceptable arbitrators to the appellees, from which the appellees selected James A. Cleaver, Esquire ("arbitrator").

The arbitration hearing was held on April 10, 1996. The arbitrator issued his opinion on June 27, 1996, awarding Ms. Sombke $66,000.00 in damages, but denying relief to her husband for loss of consortium. The appellees filed a petition to vacate and nullify the arbitration award on the ground that, *inter alia*, the arbitrator failed to make certain disclosures. In their Motion for Summary Judgment, the appellees asserted that the arbitrator failed to disclose the following: (i) his firm's legal representation of the medical group to which the appellant's expert belonged; (ii) the fact that the arbitrator, a plaintiff's attorney, represented clients against the appellant's insurer, State Farm Insurance Company ("State Farm"); (iii)

the fact that the arbitrator and his law firm were insured by State Farm; and (iv) the fact that the arbitrator and his law firm had personal and/or business relationships with two State Farm agents. It is undisputed that the arbitrator failed to make the disclosures about which the appellees complain.

The Circuit Court for Calvert County (the Honorable Warren J. Krug, presiding) granted the appellees' Motion for Summary Judgment, finding that "[t]here were conflicts of the arbitrator that were not disclosed to the parties." Judge Krug vacated the arbitration award and ordered that the issue of damages be submitted for re-arbitration before a different arbitrator to be selected from a new list of arbitrators. It is from the Opinion and Order granting the appellees' Motion for Summary Judgment that the appellant noted a timely appeal.

The following issues, which we have slightly re-worded, were presented to us for review:

1.  Whether the trial court erred in adopting the holding in *Hartman v. Cooper* as the applicable standard for determination of "evident partiality".

2.  Whether the trial court could have found, in application of the standard set forth in *Wyndham v. Haines,* that the appellees did not adduce sufficient evidence to permit a reasonable inference of actual partiality, thereby warranting denial of the Motion for Summary Judgment.

Finding no error, we shall affirm the decision of the lower court. We explain.

The statutory grounds for vacating an arbitrator's award are enumerated in Md.Code (1974, 1998 Repl.Vol.), § 3–224(b) of the Courts & Judicial Proceedings Article which provides, in pertinent part, as follows:

(b) *Grounds.*—The court shall vacate an award if:

(1) An award was procured by corruption, fraud, or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party . . .

. . . .

■ At issue in this appeal is the arbitrator's duty of disclosure. There is no genuine dispute as to any material fact that the arbitrator did not disclose certain relationships to the parties prior to or during the course of the arbitration proceedings.

The United States Supreme Court addressed the issue of an arbitrator's duty of disclosure in the case of *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), *reh'g denied,* 393 U.S. 1112, 89 S.Ct. 848, 21 L.Ed.2d 812 (1969), *disapproved on other grounds, Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 825–26 n. 3, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). The case arose out of a claim by a subcontractor against the sureties of a prime contractor. The Supreme Court vacated the award of an arbitration panel because a member of the panel had not disclosed that his firm previously had a "sporadic" but "repeated and significant" business relationship with the prime contractor. *Id.,* at 146, 89 S.Ct. 337. The Supreme Court decided the case under the vacation provision of the United States Arbitration Act, 9 U.S.C. § 10, which is virtually identical in substance to the corresponding provision of the Maryland Uniform Arbitration Act. *See* § 3–224(b)(1) and (2) of the Courts & Judicial Proceedings Article. The Supreme Court stated that it could perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias. *Id.,* at 149, 89 S.Ct. 337. The Supreme Court additionally stated that "[w]e should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review". *Id.* The Supreme Court vacated the award even though the petitioner did not accuse the arbitrator in question of being "actually guilty of fraud or bias", and the Supreme Court conceded that the arbitrator had no "improper motives". *Id.,* at 147, 89 S.Ct. 337.

In the *Commonwealth Coatings* case, the failure to disclose the business relationship was a sufficient basis to warrant vacation of the arbitration award. As Justice White pointed out in his concurring opinion, disclosure is necessary in order to create and maintain the atmosphere of trust and openness that is needed to preserve the integrity and effectiveness of the arbitration process. *Id.*, at 151, 89 S.Ct. 337 (White, J., concurring).

An arbitrator's duty of disclosure has likewise been addressed by the appellate courts in Maryland. The case of *McKinney Drilling Co. v. Mach I Ltd. Partnership*, 32 Md. App. 205, 359 A.2d 100 (1976), involved a construction dispute in which a contractor sought to vacate an arbitration award in favor of a builder because, *inter alia*, the arbitrator had not disclosed an ongoing relationship with a concrete supplier of the builder. *Id.*, at 208, 359 A.2d 100. Over objection, the arbitrator permitted the concrete supplier to participate indirectly in the arbitration hearing. *Id.*, at 206–07, 359 A.2d 100. This Court affirmed the vacation of the award and held that the undisclosed relationship with the supplier, together with the participation of the supplier at the hearing, "was sufficient, as a matter of law, to permit the judge to draw a rational inference that the arbitrator was not neutral". *Id.*, at 211–12, 359 A.2d 100.

In *Hartman v. Cooper*, 59 Md.App. 154, 474 A.2d 959 (1984), *cert. denied*, 301 Md. 41, 481 A.2d 801 (1984)[1], a unanimous decision of a Health Claims Arbitration Office panel was vacated because a physician on the panel had not disclosed on his panel data sheet that (i) he was, at the time, a defendant in a separate medical malpractice case; and (ii) he had previously testified for the defense in depositions in two other malpractice cases. *Hartman*, 59 Md.App. at 158–59, 474 A.2d 959. The *Hartman* Court held, *inter alia*, that the doctor's failure

---

1. The incident litigated in *Hartman* advanced to the appellate courts on two occasions. *Cooper v. Hartman*, 68 Md.App. 725 (1986), *rev'd*, 311 Md. 259, 533 A.2d 1294 (1987). The Court of Appeals's ultimate disposition was unrelated to the arbitration proceeding.

to disclose relevant information constituted "evident partiality" and reasonably supported an inference of the existence of bias, prejudice or partiality. *Hartman,* 59 Md.App. at 167, 474 A.2d 959.

Two years after *Hartman* was decided, the Court of Appeals issued its ruling in *Wyndham v. Haines,* 305 Md. 269, 503 A.2d 719 (1986)[2]. In *Wyndham,* medical malpractice claimants filed a petition to vacate the award on the basis of alleged partiality of the arbitration panel chairman. The claimants learned of possible bias on the part of the panel chairman nearly a month before the arbitration hearing. The claimant's counsel unsuccessfully sought disqualification of the chairman prior to the commencement of the arbitration hearing[3]. An adverse arbitration award was issued against the claimants and they thereafter moved to have the award vacated. The trial court denied this request. The *Wyndham* Court found that the claimants offered no proof in furtherance of their allegation of evident partiality; specifically, no affidavit in support of their petition to vacate had been filed as required by Rule 2–311(d)[4]. *Wyndham,* 305 Md. at 279, 503 A.2d 719. The *Wyndham* Court addressed *Hartman,* overruling the part of the opinion that stated that a mere appearance of possible bias was sufficient to vacate an arbitration award[5]. In narrowing the standard set forth in *Hartman,* the Court stated that the establishment of evident partiality requires

---

**2.** Prior to consideration by this Court, the appellants sought and received a writ of certiorari from the Court of Appeals.

**3.** The claimants filed a motion to recuse the panel chairman which was not ruled upon. *Wyndham,* 305 Md. at 278, 503 A.2d 719.

**4.** Rule 2–311(d) requires that any motion or response thereto that is based on facts not contained in the record or papers on file shall be supported by an affidavit and accompanied by any papers upon which it is based.

**5.** In a footnote, the Court stated that to the extent *Hartman* is inconsistent with the *Wyndham* decision, it is disapproved. *Wyndham,* 305 Md. at 279 n. 9, 503 A.2d 719. The history of the *Hartman* case reflects that this portion of the opinion was overruled by *Wyndham.*

more than speculation and bald allegations of bias; in other words, the moving party must prove facts sufficient to permit an inference that there was indeed partiality by an arbitrator. *Id.* The *Wyndham* Court, however, did not insist on a standard so high as to require a showing of actual bias or proof of improper conduct. John J. Kim & Kathryn A. Turner, *Survey: Developments in Maryland Law 1985–1986: VII Health Care,* 46 Md. L.Rev. 782, 792 (1987).

In the case *sub judice,* there is no genuine dispute as to any material fact that the disclosures about which the appellees complain were not made at any time prior to or during the arbitration proceedings. The sole expert evidence submitted by the appellant was a report from Dr. Joseph T. Crowe of Prince George's Orthopaedic Associates, P.A. The arbitrator accepted this report and presumably considered it in reaching his decision. In the copy of the report that the appellant submitted to the arbitrator, portions of Dr. Crowe's discussion of Ms. Sombke's left heel were underlined. The opinion of the arbitrator discussed and made findings on some of Ms. Sombke's injuries—the arbitrator accepted Dr. Crowe's conclusion that her left heel condition was not related to the accident.

The arbitrator did not disclose to the parties that his law firm, of which he is a senior partner, had an attorney-client relationship with this particular medical firm. The arbitrator's law firm listed Prince George's Orthopaedic Associates, P.A. as a "representative client" in its Martindale–Hubbell Law Directory listing from 1995 through 1997 (including the year within which the arbitration was conducted) and had total billings to the medical firm in the amount of $44,765.00. In addition, the arbitrator failed to disclose that he personally performed some of the legal services rendered on behalf of Prince George's Orthopaedic Associates, P.A. The fact that the arbitrator had been a patient of the medical group on two separate occasions was also not disclosed.

During the course of conducting the post-arbitration discovery permitted by Judge Krug, the appellees learned that, in the time period between April 10, 1996 (the date of the

arbitration hearing) and June 27, 1996 (the date of the decision), the arbitrator had cases in the course of his practice in which he was representing clients who were pursuing claims against State Farm (the appellant's insurance carrier). The appellees also learned that the arbitrator's law firm (a recognized plaintiff's firm) had approximately 200 open personal injury files. Additionally, the arbitrator and his law firm had numerous business and personal insurance policies with State Farm and had social or business relationships with two State Farm agents.

The appellant argues that the lower court, in granting the appellees' Motion for Summary Judgment, erroneously adopted the standard articulated in *Hartman* and that had the *Wyndham* standard been applied, the evidence would have been insufficient to permit an inference of partiality and the arbitration award would have been upheld. We disagree.

The underlying issues involve an arbitrator's independent duty of disclosure—an issue which was not decided by the *Wyndham* Court. Recognizing that parties to an arbitration are entitled to a fair proceeding, it is important that the selected arbitrator be free of bias or prejudice.

The Court of Appeals has addressed the issue of the appearance of bias in the judicial context. The case of *Jefferson–El v. State*, 330 Md. 99, 622 A.2d 737 (1993), defined an appearance of bias in terms of a "permissible" inference of bias, stating that the issue was whether a person aware of the underlying facts reasonably could conclude that the judge was biased, whether or not the judge was actually biased. *Id.*, at 112, 622 A.2d 737. The *Jefferson–El* Court also stated that an appearance of bias exists if the judge's impartiality might reasonably be questioned. *Id.*, at 108–09, 622 A.2d 737 (citing *In re Turney*, 311 Md. 246, 253, 533 A.2d 916 (1987) and *Surratt v. Prince George's County*, 320 Md. 439, 468, 578 A.2d 745 (1990)).

Other jurisdictions have addressed the issue of disclosure and the appearance of bias in the arbitration context. It has been held that the standard for whether disclosure is required

is whether the facts "might reasonably lead to an impression or appearance of bias". *Albion Public Schools v. Albion Education Association,* 130 Mich.App. 698, 344 N.W.2d 55, 57 (1983). It is not necessary for a party to show that the arbitrator was actually biased in order to establish a breach of the duty of disclosure. *See, e.g., Burlington Northern Railroad Co. v. TUCO, Inc.,* 960 S.W.2d 629, 636 (Tex.1997); *Schmitz v. Zilveti,* 20 F.3d 1043, 1046 (9th Cir.1994); *Barcon Associates, Inc. v. Tri–County Asphalt Corp.,* 86 N.J. 179, 430 A.2d 214, 220 (1981).

This Court concurs with Judge Krug's determination that the arbitrator's failure to disclose his firm's representation of Prince George's Orthopaedic Associates, P.A. was particularly egregious. We agree with Judge Krug's conclusion that a reasonable person, upon learning of the undisclosed information in this case, would have investigated and made further inquiries of the arbitrator regarding his dealings with Prince George's Orthopaedic Associates, P.A. When presented with Dr. Crowe's report, it was incumbent upon the arbitrator to stop the proceedings, make the disclosure, and give the appellees the opportunity to determine whether they desired to have the proceeding continue with the current arbitrator. The arbitrator's failure to do so supports Judge Krug's factual finding that the undisputed facts logically lead to an inference of partiality.

Arbitration has long been recognized as a favored method of dispute resolution. *Baltimore County v. Mayor and City Council of Baltimore,* 329 Md. 692, 701, 621 A.2d 864 (1993). It lightens the load on clogged court dockets, generally provides an informal, speedier, and less expensive alternative to litigation, and allows the parties to present their disputes to a decision-maker with expertise in the field at issue. *Birkey Design Group, Inc. v. Egle Nursing Home, Inc.,* 113 Md.App. 261, 265, 687 A.2d 256 (1997); *Marsh v. Loffler Housing Corp.,* 102 Md.App. 116, 124, 648 A.2d 1081 (1994). The role of a court reviewing an arbitrator's decision is severely limited. *Marsh,* 102 Md.App. at 124, 648 A.2d

1081; *Birkey*, 113 Md.App. at 265, 687 A.2d 256. A court may, however, set aside an award where "the proceedings lacked fundamental fairness". *Chillum–Adelphi Volunteer Fire Department, Inc. v. Button & Goode, Inc.*, 242 Md. 509, 517, 219 A.2d 801 (1966).

■ The presumptive validity of consensual arbitration awards depends upon the underlying integrity of the arbitration process. The arbitrator's failure to disclose his relationships with Prince George's Orthopaedic Associates, P.A. deprived the appellees of pertinent information necessary to make a knowledgeable selection of an impartial arbitrator. The appellees were entitled to make an independent decision as to whether they would accept the arbitrator, in spite of his previous affiliations. The appellees were not afforded this opportunity.

Judge Krug applied the appropriate standard of review in that he found that "[t]he instant case presents more than mere allegations and speculation—the facts that give rise to the inference of partiality are undisputed." The lower court additionally found that the standard for "evident partiality" had been met and concluded that vacation of the arbitrator's award was both warranted and proper. This Court agrees. In finding, as Judge Krug found, that the evidence supported an inference of evident partiality regarding the arbitrator's law firm's relationship with Prince George's Orthopaedic Associates, P.A., it is not necessary to reach the question of whether, standing alone, the other allegations asserted by the appellees would have been sufficient to vacate the arbitration award.

We affirm the decision of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR CALVERT COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**